COMMONWEALTH vs. ALAN P. COHEN.

Plymouth. February 3, 1971. — April 1, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Search and Seizure. Arrest. Probable Cause. Narcotic Drugs. Constitutional Law, Search and seizure.*

There was constitutional justification for seizure by police, without a warrant, of narcotic drugs, a revolver, a Turkish water pipe, ashtrays, and sealed manila envelopes containing marihuana, all of which were in open view in a small apartment and within the immediate control of one of the occupants thereof when he was lawfully arrested there, and such articles were properly admitted in evidence at a jury waived trial of that occupant on narcotic drug charges where it appeared, among other circumstances, that the police had gone to the apartment building to quell a disturbance when summoned by occupants thereof and had been admitted by its manager, that the police sought out the apartment from which loud noises were emanating, that, detecting the odor of burning marihuana and hearing statements indicating that narcotic drugs were being used, they had probable cause to believe that a felony was being committed in the apartment, and that, when such occupant "slammed" its door, an officer kicked it open, saw the defendant "heading" for a table on which lay narcotic paraphernalia, and then arrested him; [144-145] and even if the seizure then of sugar cubes containing LSD found in the refrigerator was not constitutionally justified, the admission of the cubes in evidence was not prejudicial in view of the overwhelming evidence warranting conviction. [146]

INDICTMENTS found and returned in the Superior Court on May 17, 1968.

A motion to suppress and the cases were heard by *Taveira*, J.

*Stephen Axelrad (Reuben Goodman* with him) for the defendant.

*Robert L. Anderson*, District Attorney, & *John E. Sullivan*, Assistant District Attorney, for the Commonwealth, submitted a brief.

SPIEGEL, J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from his convictions on indictments charging unlawful possession of a narcotic drug and unlawful posses-

sion of a narcotic drug with intent to sell. The trial was held before a judge sitting without a jury. The sole assignment of error argued by the defendant relates to the denial of his motion to suppress evidence, as a result of which "the court made use of evidence that was the fruit of an illegal arrest and an illegal search conducted without a warrant."

At the hearing on the pre-trial motion to suppress and at the trial, the pertinent evidence was as follows. On February 20, 1968, at approximately 11:50 P.M., Officer Leon J. Cyr, a plain clothes detective of the Brockton police department, was on cruiser patrol with another officer. He received a report from the dispatcher to investigate a disturbance "regarding a loud party" in an apartment building located at 64 West Elm Street in Brockton. Prior to February 20, Officer Cyr had observed this building "every night on patrol, to a certain extent," "[b]ecause of certain people that inhabit[ed] the premises." Three or four days before the twentieth he had seen three individuals whom he suspected of keeping or using drugs enter the building but he did not know which apartment in the building was inhabited or frequented by them. On the evening in question he did not see these individuals or the defendant go into the building.

Over a period of two or three weeks prior to the twentieth, Officer Cyr "had checked . . . out" the defendant on one or two occasions regarding routine motor vehicle "checks." At that time, he investigated the defendant's background and learned that the defendant was on parole from Deer Island and that he was involved with narcotics. Officer Cyr also learned from another Brockton police detective that in the latter part of January a suitcase containing narcotics had been taken from another location in Brockton that "belonged to" the defendant.

On the evening of February 20, about two hours before entering the premises, Officer Cyr spoke to the manager of the building who gave him a list of people "registered" therein. When the officer described the defendant and another individual, the manager said that the two people who

"registered" for an apartment fitted that description, but that they had "registered" under different names.

Upon entering the hallway of the building, Officer Cyr and another officer spoke to an elderly couple who said that "they couldn't sleep and there was a lot of noise" in the apartment occupied by the defendant. One officer went to the front of the building to meet two other uniformed officers. When Officer Cyr approached the apartment, he heard loud conversation, loud music, and "smelled" the odor of burning marihuana. He heard a male voice say "Go ahead, Linda, suck it up into your lungs real deep; make believe you're a sword swallower." He heard another voice say "Pass some of that grass over here." He listened for three or four minutes and after being joined by the other officers, he knocked on the door. The defendant opened the door to the length of a chain lock. Officer Cyr recognized the defendant, and said to him, "The police . . . open up." The defendant "slammed" the door in the officer's face. The officer heard the defendant shout "Get that stuff out of here," heard a window opening, and "a lot of feet pounding on the floor." He kicked the door in, saw the defendant "heading for the kitchen table" and a young lady being helped out of the window. The officer pulled the girl back into the room and at the same time he saw an open suitcase on an adjacent bed. Inside the suitcase, he saw "green herbs," pills and a revolver. Next to the defendant, on the kitchen table, there was a Turkish water pipe and several sealed manila envelopes. Manila envelopes were also found on top of a bureau. He then arrested the defendant and the other individuals in the apartment. Residue was scraped from the ashtrays and from the Turkish water pipe. One of the officers then went to the refrigerator and took six sugar cubes. At the police station, one of the officers asked the defendant why the envelopes were sealed. The defendant replied: "That's the way I sell the stuff." "I wanted to make a quick buck."

Chemical analysis disclosed that the "green herbs" found in the suitcase, the material in the manila envelopes and

the scraped residue contained cannabis or marihuana. The sugar cubes contained LSD.

The apartment in which the arrest and search took place had only two small rooms consisting of a living room, a bedroom, and a kitchenette which was part of the living room.

The defendant asks us to invalidate the arrest and search on the grounds that (1) a search warrant was required and (2) assuming the validity of the arrest, the search cannot be justified as incidental to that arrest.

We agree that as a general rule "only in 'a few specifically established and well-delineated' situations, *Katz* v. *United States*, 389 U. S. 347, 357, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it." *Vale* v. *Louisiana*, 399 U. S. 30, 34. A search conducted incident to a valid arrest is an established exception to the general rule. *Vale* v. *Louisiana, supra.* However, prior to the decision in *Chimel* v. *California*, 395 U. S. 752, there was considerable confusion as to the extent to which a search incident to arrest was constitutionally permissible. In *Trupiano* v. *United States*, 334 U. S. 699, 705, the court said that "[i]t is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable." Shortly thereafter, in the case of *McDonald* v. *United States*, 335 U. S. 451, 455–456, the court, relying upon the *Trupiano* case, reached a similar result in holding that a search without a warrant could not be justified unless the exigencies of the situation make that course imperative.

Later in the case of *United States* v. *Rabinowitz*, 339 U. S. 56, the court overruled the *Trupiano* case and held that the test "is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *Supra*, at 66. However, subsequent to the *Rabinowitz* case, the court continued to cite with approval the case of *McDonald* v. *United States, supra*, which was substantially similar to the *Trupiano* case. See *Katz* v. *United States*, 389 U. S. 347, 357, fn. 19.

In *Chimel* v. *California, supra,* the court crystallized the law in this area and overruled the decision in the *Rabinowitz* case. It held that in order to sustain the search of a dwelling house as incident to a lawful arrest, the search must constitutionally be confined to "the area from within which . . . [an arrestee] might gain possession of a weapon or destructible evidence" (p. 763). Last term, in *Vale* v. *Louisiana,* 399 U. S. 30, the court did not express an opinion on whether the *Chimel* case should be accorded retroactive effect.[1] The *Vale* case involved the search of a dwelling house without a warrant after the defendant had been arrested on the front steps of his house. The court held that even prior to the *Chimel* case a search of a dwelling house could not be justified as incident to a lawful arrest unless the arrest took place inside the house.

In the instant case, as in the *Vale* case, we need not decide whether the *Chimel* case must be retroactively applied. However, unlike the approach taken by the court in the *Vale* case, we assume the retroactive application of the *Chimel* case and hold that even under the stringent standards established in that case the seizure of the evidence in the apartment at the time of the defendant's arrest can constitutionally be justified with the exception of the sugar cubes containing LSD that were found in the refrigerator. Assuming the invalidity of the seizure of the sugar cubes, we find their introduction in evidence to be harmless error.

We see no merit in the defendant's first argument that a search warrant should have been procured before entering the apartment. The defendant relies upon *McDonald* v. *United States,* 335 U. S. 451, where a search was made without a warrant of a building that had been under surveillance for two months and where ample opportunity existed to obtain a warrant. In the present instance, however, unlike the *McDonald* case, the police went to the apartment build-

---

[1] After the decision in the instant case, the Supreme Court in *Hill* v. *California,* 401 U. S. 797 (affirming the judgment in *People* v. *Hill,* 69 Cal. 2d 550) held (p. 802) that the *Chimel* case should not be applied retroactively. REPORTER.

ing to quell a disturbance, not to conduct a previously planned raid. Although they "had checked . . . out" the building in the past and were suspicious of certain individuals who frequented the building, neither the building nor the suspected individuals were under surveillance nor did the police know, until just prior to the arrest, which apartment in the building was inhabited or frequented by them. The police were summoned by occupants of the building and admitted by the manager. The officers rightfully sought out the apartment from which the noise was emanating. When Officer Cyr detected the odor of burning marihuana, and heard statements indicating that narcotic drugs were being used, he had probable cause to believe that a felony was being committed. *Commonwealth* v. *Andrews,* 358 Mass. 721, 723.

In regard to the defendant's second contention concerning the scope of the search, it is indisputable that the apartment was a small one. The drugs and revolver in the suitcase were in open view and were seized within the area over which the occupants had " 'immediate control' . . . to . . . gain possession of a weapon or destructible evidence," within the language of the case of *Chimel* v. *California,* 395 U. S. 752, 763. Similarly, the Turkish water pipe, ashtrays and manila envelopes containing cannabis or marihuana were on the kitchen table in open view and within the immediate control of the defendant who was standing next to the table when he was placed under arrest. We do not think that the fact that the envelopes were sealed removed them from the "immediate control" of the defendant. Narcotics concealed in small manila envelopes are just as destructible as if they are lying in open view. Indeed, it is reasonable to assume that their destruction would be more likely to take place if, just before an arrest is about to be made, there is a considerable amount of activity such as people scurrying about a room, voices shouting and a girl climbing out of a window. In such circumstances, the police would certainly be justified in acting with concomitant urgency.

The sugar cubes containing LSD found in the refrigerator might be said to fall within the prohibited area as defined in *Chimel* v. *California*, 395 U. S. 752, 763. The court there said that "[t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." Assuming that the seizure of the cubes cannot constitutionally be justified under the standard recited above, and therefore were subject to exclusion, there still remained "overwhelming" evidence to justify the conviction of the defendant. *Harrington* v. *California*, 395 U. S. 250, 254. Marihuana was found in the suitcase, on the kitchen table, and on top of a bureau. Residue scraped from the Turkish water pipe and from the ashtrays contained cannabis or marihuana. Incriminating statements were overheard by the police just prior to the arrest. Subsequent to the arrest, the defendant stated that he packaged the marihuana in manila envelopes to sell it that way and "make a quick buck." Even excluding the sugar cubes, we are convinced that in view of the evidence outlined above, a trial judge sitting without a jury would be fully warranted in finding the defendant guilty of the offences charged. Indeed, it would be difficult to understand how a judge confronted with the foregoing facts could acquit the defendant.[2]

*Judgments affirmed.*

---

[2] In his brief, the defendant questions whether he had the burden of proving the invalidity of the search, as concluded by the trial judge. See *People* v. *Mason*, 22 Mich. App. 595, 615–618, fn. 18, for a list of State and Federal cases holding that the prosecution has the burden of proving that a warrantless search qualifies under either the exigent circumstances or incidental to an arrest exceptions to the search warrant requirement. Compare *Commonwealth* v. *Mitchell*, 350 Mass. 459, 464, which held that the defendant met his burden of proving the invalidity of a search warrant and *Commonwealth* v. *Fancy*, 349 Mass. 196, 202–203, holding that the burden of establishing that evidence has been illegally obtained is on the moving party. In any event, we need not decide this point because even if we assume that the Commonwealth had the burden of justifying the search, without a warrant, the Commonwealth, as we have said, introduced sufficient evidence to justify the search.