[No. 550-1.    Division One—Panel 1.    July 19, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANCIS CLAYTON PALMER, *Appellant*.

*Thomas A. Prediletto* and *Richard W. Hart,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Stewart P. Riley, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant was convicted after jury trial of the crime of unlawful possession of firearms and of the crime of grand larceny. He appeals, making two assignments of error.

The first assignment of error involves the consideration of the evidence introduced at the CrR 101.20W hearing.

From that evidence, the court could find the following facts.

On the night of November 23, 1969, at approximately 2:30 a.m., Seattle Police Officers D. L. Hansen and A. E. Smalley were in their prowler car patrolling Rainier Avenue South in Seattle, heading north, traveling at approximately 15 miles per hour. As they passed the Rainier Pharmacy at 5415 Rainier Avenue South, Officer Hansen noticed a man standing at the northerly side of the doorway. The man appeared to be doing something with his hands at the approximate position of the alarm box lock which controls the burglar alarm system of the pharmacy. Upon seeing the man, the driver, Officer Hansen, after a U-turn, stopped in front of the drugstore. He jumped out of his car with his revolver out, and headed toward the defendant. By that time, defendant was moving toward a Cadillac car in the parking lot south of the drugstore. Officer Hansen ordered the defendant to stop and told him he was under arrest and handcuffed him. At that time, defendant was approximately 10 feet from the parked Cadillac car. Its lights were on, the driver's seat was unoccupied, and a woman was seated on the right hand side of the front seat of the car. There was no other car in the parking lot.

While Officer Hansen was proceeding with the defendant's arrest, Officer Smalley, with his gun out, had proceeded to the Cadillac car, where he ordered the woman out. She leaned over to her left and appeared to fumble with a paper bag located either on the floor of the car or on the front seat to the right of the driver's seat. The officer repeated his command and she then came out of the car. Officer Smalley then escorted the woman to where Officer Hansen was standing with the defendant in custody. There Officer Smalley either saw Officer Hansen find the lock pick on the person of the defendant or he helped Officer Hansen with the search of defendant and found it. The woman was likewise placed under arrest and handcuffed, and both the defendant and the woman were placed in the back seat of the officers' car.

Officer Smalley, after placing the woman in the officers' car, then went back to the Cadillac, opened its door and looked into the paper bag. He found it to contain four revolvers. He closed the car door, returned to Officer Hansen and informed him of what he had found. Thereupon, Officer Hansen walked to the Cadillac car, peered through the window of the car, and there he saw the bag full of pistols. Officer Hansen then called for the police sergeant and another car to stand by the Cadillac while awaiting an impound. The Cadillac was impounded later that night, apparently as incident to a lawful arrest. The next morning, upon a search warrant being obtained, the car was searched and there was taken therefrom certain items, including the pistols contained in the paper bag, another lock pick found under the driver's seat, and a billfold. These items were later discovered to have been stolen. They were introduced in evidence to convict the defendant of the crime of grand larceny. Defendant, after receiving Miranda warnings in the presence of his attorney, stated that he had bought the guns found in the car for $125.

The defendant moved below that the evidence objected to be suppressed because he asserts that, under *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), in effect at the date of arrest (*Williams v. United States,* 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148 (1971)), once the arrestees were placed in the officers' car, the right to search incident to the arrest terminated since the arrestees could not then obtain any weapon from nor destroy any evidence from within the Cadillac car. He contends that under the fruit of the poisonous tree doctrine, the later search of the car and the seizure therefrom of the articles introduced in evidence, albeit pursuant to a search warrant, were illegal. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *Traub v. Connecticut,* 374 U.S. 493, 10 L. Ed. 2d 1048, 83 S. Ct. 1899 (1963); *State v. Woods,* 3 Wn. App. 420, 475 P.2d 573 (1970). *See also, State v. Melrose,* 2 Wn. App. 824, 470 P.2d 552 (1970). The trial court denied defendant's motion to suppress the

evidence, his action in so doing being assigned as error. Whether the *Chimel* limitations may be properly invoked here, we need not determine. The plain view doctrine later discussed provides adequate ground to uphold the trial court's action. Nevertheless, we believe that it would not be inappropriate to point out why we leave open the question presented by defendant's contention.

*Chimel* held illegal, as violative of the Fourth and Fifth Amendments, a routine warrantless search of rooms in a house other than the room in which the suspect was arrested, even though the search and seizure was incident to an arrest and contemporaneous with it. In so doing, however, *Chimel* continued to recognize, as an exception to the general rule requiring a search warrant, the right of an arresting police officer incident to an arrest and substantially contemporaneous with it to conduct a warrantless search of the arrestee and the area within his immediate control, *i.e.*, "the area from within which he might have obtained either a weapon or something that could have been used as evidence against him . . ." 395 U.S. at 768.

In determining whether defendant's contention is one that must now be determined, we should remember the uncertainties that still remain for resolution notwithstanding *Chimel*. The acceptance of defendant's contention would first require reexamination of the Washington case law on the right to search incident to an arrest in view of the immediate control rule, both with respect to the nearby automobile of the arrestee (*e.g., State v. McClung*, 66 Wn.2d 654, 404 P.2d 460 (1965); *State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952), and with respect to the continued viability of the right to search incident to an arrest after the arrestee has been removed by the police officers from the scene of the arrest to secure against the arrestee's escape. *State v. Wilson*, 70 Wn.2d 638, 424 P.2d 650 (1967); *State v. Schwartzenberger*, 70 Wn.2d 103, 422 P.2d 323 (1966); Annot., 19 A.L.R.3d 727, §§ 10, 11, 14 and 15 (1968). *Cf. Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). Furthermore, it should be remembered that

still to be assessed in applying the search incident right is the impact of *Chimel* and now *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), which reaffirms *Chimel,* upon the range of permissible temporal and spatial limitations. Thus, in defining the permissible limitations there is the question of the significance now to be given to the area of the arrestee's control immediately prior to the arrest; and the answer to be given to the question of whether the search incident right otherwise existing with respect to a room or car is lost if the police officers, pursuant to their duty, temporarily remove the arrestee to another area (such as the police officers' car) to prevent his escape.

There is some decisional support since *Chimel* for the broad reading given that case by the defendant *(see State v. Jones,* 2 Wn. App. 627, 633, 472 P.2d 402 (1970))—a reading at least arguably consistent with *Coolidge.* However, caution dictates approval of the view expressed by Mr. Justice Harlan's statement in *Coolidge* concerning a question left open by the Supreme Court for future decision. He there stated:

> This matter should not be decided in a state case not squarely presenting the issue and where it is not fully briefed and argued.

403 U.S. at 492. Furthermore, the wisdom of moving cautiously in passing upon defendant's contention—as was done in *State v. Jones, supra*—is additionally justified by the just announced decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), imposing civil liability for damages upon a federal agent who, under color of his authority, violated the Fourth Amendment.

We turn then to the plain view rule. *Coolidge* sharpens but does not reject the independent rule that

> [O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

*Harris v. United States,* 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968). *See Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *State v. McIntyre,* 3 Wn. App. 799, 801, 478 P.2d 265 (1970). *Coolidge* makes clear that the plain view rule operates even though the plain view is had of an object in an area outside the spatial limitations of *Chimel. Coolidge v. New Hampshire,* 403 U.S. at 465 n.24.

In the instant case, Officer Smalley's first discovery of the paper bag took place when he first walked to the Cadillac car to reach the woman seated there. The discovery of the bag was inadvertent and occurred while he was outside the car in a place where he had a right to be. Moments later, after securing the woman arrestee against escape, he returned to the car to examine the paper bag which upon discovery had challenged his attention. The arrest, the circumstances leading thereto, the lock pick discovered on the person of the arrestee, the woman fumbling with the paper bag before she obeyed the officer's command to get out of the car, the hour, the impracticability of obtaining a search warrant at that time to search the mobile, unoccupied and unlocked car, were all circumstances creating both probable cause to believe that the bag contained incriminating evidence and justification for a warrantless search thereof. This is not a case of satisfying Officer Smalley's idle curiosity, but rather a case of satisfying a lawful curiosity arising in the course of performance of his duty. Furthermore, this is not a case of plain view had as a result of a "general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire, supra* at 466.

The fact that the pistols themselves were not visible to Officer Smalley until he opened the bag inside the car which was visible from outside the car, does not prevent the operation of the plain view rule. Under that rule, it makes no difference that the object was in a paper bag if the officers had, as they did here, probable cause to believe that incriminating evidence was contained therein. *See Commonwealth*

*v. Cohen,* .......... Mass. .........., 268 N.E.2d 357 (1971) (small sealed manila envelope visible from place of arrest). The motion to suppress the evidence was properly denied.

■ ■  Defendant next contends that the trial court erroneously overruled defendant's oral motion that the judge disqualify himself from sitting. The judge to whom the case had been first assigned for trial had been disqualified by the defendant's filing of an affidavit of prejudice. RCW 4.12.050. He was therefore not entitled under RCW 4.12.050 to disqualify the trial judge as a matter of right. *State v. Dixon,* 74 Wn.2d 700, 446 P.2d 329 (1968); *State ex rel. Sheehan v. Reynolds,* 111 Wash. 281, 190 P. 321 (1920). The motion was apparently based upon a claim of prejudice which was not embodied in an affidavit, which, the state contends, is required by RCW 10.25.070. *See* RCW 4.12.050. The court, in denying the motion on the ground that he knew no basis for it, did not rely upon RCW 10.25.070 as the basis of denial. Defendant on appeal does not discuss the applicability of RCW 10.25.070, nor does he advance any constitutional or other legal justification for failure to file an affidavit in support of his claim of prejudice. Instead, he simply argues that the court erred in refusing to disqualify himself by reason of what defendant asserts is the court's prejudice against the defendant. The prejudice claimed is a conclusion he draws from the trial judge's earlier action in the case whereby he increased defendant's bail bond from $25,000 to $150,000 on the ex parte motion of the deputy prosecuting attorney. Such a ground standing alone, however, is insufficient to show prejudice. That the trial judge was not prejudiced is supported by the fact that he conducted the trial itself in an entirely fair manner. Defendant, while disagreeing with the court's rulings, does not claim otherwise. Furthermore, it is to be remembered that it was the jury and not the judge that rendered the guilty verdict. The state, without waiving its reliance upon defendant's failure to comply with RCW 10.25.070, further contends, and the defendant in his brief concedes, that the defendant's oral motion to disqualify the trial judge called

for an exercise by the trial judge of a sound discretion in passing upon the sufficiency of the showing made in support of the motion; and that the action of the trial court must be upheld in the absence of an abuse of discretion. In support of its contention, the state relies upon the rule announced in criminal cases involving change of venue. *State v. Malone,* 75 Wn.2d 612, 614, 452 P.2d 963 (1969); *State v. Palmer,* 73 Wn.2d 462, 438 P.2d 876 (1968). We agree that the trial court in the instant case did have discretion in ruling upon defendant's motion based upon his claim concerning the existence of alleged prejudice. However, we find no "convincing showing of an abuse of discretion." *See State v. Malone, supra* at 614.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

Petition for rehearing denied September 20, 1971.

Review denied by Supreme Court November 9, 1971.