[No. 853-2. Division Two. February 6, 1973.]

The State of Washington, *Respondent,* v. Onnie Sanders, Jr., *Appellant.*

*Jack E. Tanner* (of *Tanner & Burgess*), for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

ARMSTRONG, J.—The defendant, Onnie Sanders, Jr., appeals from a conviction and sentence entered pursuant to a jury verdict of guilty of second-degree murder.

The primary issue in this appeal is whether, at the time the police entered the defendant's apartment without a warrant, the facts as known to the intruding officer created an emergency situation which justified the entry. We hold that the entry was justified under the emergency rule.

At about 4:50 a.m. on December 2, 1971 the Tacoma Police Department received a telephone call from an operator of the telephone company. The operator stated that a male customer had called her to ask her to ring a number for him but he was unable to give her all seven digits needed to place the call. She was certain the customer

needed medical assistance. The officer running the complaint center said he could do nothing to help without an address. The customer called the operator back, tried to give her the number again, but apparently dropped his telephone receiver and the line remained open. The operator traced the call and again called the emergency police number.

The officer at the complaint center relayed the message to the radio dispatcher who sent out a call to investigate an apartment at 1058 South 27th in the city of Tacoma. The call was coded "priority" and listed as "trouble unknown." Two police officers, Officers Giles and Floyd, answered the call and proceeded to the address.

The officers arrived and knocked on the door of defendant's apartment. They received no response. The window curtains were open slightly and they could see no one inside. They called the police department on the radio and were advised to contact the manager. The officers found the manager's apartment and knocked on his door with their night sticks. There was no response. They were then advised by radio that their supervisor was on his way to assist them.

The supervisor, Sergeant Favre, arrived and the officers again knocked on defendant's door. There was still no response. Sergeant Favre looked inside and could see "A man in there and he was standing in a crouched position, swaying back and forth. I watched him for quite some time trying to determine what he was doing. He just continued to sway back and forth." The officers then discussed what had gone on before and, as Sergeant Favre testified, "Again, I got back up on the little railing and looked in and observed this individual some more and he was just swaying back and forth. I felt there was something wrong with him." Sergeant Favre then went to the door, opened it, and walked in. The first object the sergeant saw upon entering the apartment was the dead body of a woman lying on the floor. She had been shot several times in the face. The officers also discovered the defendant, nearly unconscious,

with dried blood on his chest. On searching the bedroom, Officer Giles found a .22 caliber pistol and a man's sweater with powder burns. Later medical treatment revealed a bullet wound in the defendant's left anterior chest.

A pretrial motion to suppress the evidence obtained in the search of the apartment was made on the ground that the search and seizure were unlawful. An evidentiary hearing was held and the motion denied. At trial defendant again objected, on the same ground, to the admission of any evidence obtained as a result of the search. These objections were overruled.

On appeal defendant contends that the officers' entry into his apartment violated the Fourth Amendment's[1] restriction against unreasonable searches and seizures, article 1, section 7 of the Washington State Constitution[2] and RCW 10.79.040,[3] which implements article 1, section 7. Thus, defendant argues, any evidence seized in the apartment was inadmissible.

■ Because the statute, RCW 10.79.040, implements article 1, section 7, and because the constitutional right secured by article 1, section 7 is the same constitutional right secured by the Fourth Amendment, we will discuss the validity of the search in terms of the Fourth Amendment. *State v. Cyr*, 40 Wn.2d 840, 246 P.2d 480 (1952); *State v. Miles*, 29 Wn.2d 921, 190 P.2d 740 (1948).

■ Subject only to a few exceptions, a search without a warrant is per se unreasonable under the Fourth Amend-

---

[1]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth amendment to the United States Constitution.

[2]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article 1, section 7, Washington State Constitution.

[3]"It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided." RCW 10.79.040.

ment. *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). "The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for. it.' " (Footnotes omitted.) *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Here the state contends that an emergency situation existed and therefore the initial entry into the apartment was valid.

■ The emergency rule is a question of first impression in this state. A few federal court cases have referred to the emergency rule but have not found it to be controlling in the cases which have discussed it. The emergency rule could be justified under the well recognized exigent circumstances exception to the rules of search and seizure. *Johnson v. United States,* 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948). *McDonald v. United States,* 335 U.S. 451, 93 L. Ed. 153, 69 S. Ct. 191 (1948). However, we find the case at bench justifies a clear delineation of the emergency rule. We summarize and adopt the emergency rule as stated in *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir. 1972): Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance.[4] In applying the rule, courts must require that the police officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Footnote omitted.) *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

There are several cases from the state of California which have applied this emergency exception. *See People*

[4]Other federal cases referring to the emergency rule are: *Warden v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *Wayne v. United States,* 318 F.2d 205 (D.C. Cir. 1963), *cert. denied,* 375 U.S. 860, 11 L. Ed. 2d 86, 84 S. Ct. 125 (1963); *United States v. Barone,* 330 F.2d 543 (2d Cir. 1964), *cert. denied,* 377 U.S. 1004, 12 L. Ed. 2d 1053, 84 S. Ct. 1940 (1964).

*v. Roberts,* 47 Cal. 2d 374, 303 P.2d 721 (1956); *People v. Gonzales,* 182 Cal. App. 2d 276, 5 Cal. Rptr. 920 (1960); *People v. Clark,* 262 Cal. App. 2d 471, 68 Cal. Rptr. 713 (1968); *People v. Gallegos,* 13 Cal. App. 3d 239, 91 Cal. Rptr. 517 (1970); *People v. Sirhan,* 7 Cal. 3d 710, 497 P.2d 1121, 102 Cal. Rptr. 385 (1972). In *People v. Roberts, supra,* the police officers were investigating the burglary of a music store. An automobile had been seen, under suspicious circumstances, in the area of the store the night before the burglary. The police had arrived at the apartment of the owner of the automobile and had been advised that a man, later identified as the defendant, also lived in the apartment and had been ill. Upon arriving at the apartment, the officers received no response to their knocking but heard moaning inside. They entered to render aid and assistance and found a radio which had been taken from the music store. The California Supreme Court held the radio admissible as evidence. In *People v. Gallegos, supra,* the court held admissible evidence which was seized when a police officer entered a house without receiving permission of a small girl who had answered the door. The officer had been summoned by an anonymous telephone call advising him that the defendant, a known addict, had just taken an overdose of heroin, had passed out and needed emergency care.

The case at bench is similar to both *People v. Roberts, supra,* and *People v. Gallegos, supra.* The police officers were summoned to Sanders' apartment for a valid reason. Upon arriving, they received no answer to their knocking on the door and when Sergeant Favre saw the defendant swaying and possibly in need of medical attention, he entered to render aid and assistance. His initial entry into the apartment was valid, *McDonald v. United States, supra, United States v. Jeffers,* 342 U.S. 49, 96 L. Ed. 59, 72 S. Ct. 93 (1951), and an item which came into the sergeant's view while performing some function within the scope of his initial entry is admissible. That which is in plain view is not the product of a search. *Ker v. California,*

374 U.S. 23, 36, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *State v. Hackett,* 4 Wn. App. 360, 481 P.2d 466 (1971).

The defendant asserts that the failure of Officers Giles and Floyd to enter the apartment when they first received no response indicates that, in their minds, no emergency existed. Furthermore, when Officer Giles first beat on the door with his night stick, it opened about an inch and a half yet he hurriedly closed it. We believe these actions are of no consequence to the disposition of this appeal for two reasons.

■ First, at the evidentiary hearing on the motion to suppress, Officer Giles did not state that he closed the door because he felt there was no emergency. Rather, the reason given was that his year and a half experience in the downtown Tacoma area and his knowledge of events which occurred in the last several years with other policemen in this same apartment complex made him "a little afraid to walk into an apartment with trouble unknown." Secondly, the initial entry was made by Sergeant Favre, not by Officers Giles or Floyd. In determining the reasonableness of a search without a warrant, courts must look to the facts known to the officer conducting that search. *Carroll v. United States,* 267 U.S. 132, 156, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). Sergeant Favre testified that because he could see the defendant swaying and because the defendant gave no response to the knocking on the door, he believed there was something wrong with him. Knowing that there had been a call for assistance at this apartment, knowing that the two officers had been attempting to arouse a response for quite some time, and seeing the defendant swaying and oblivious to the pounding on the door created in the mind of Sergeant Favre an emergency situation. Under these circumstances his conclusion was reasonable.

■ We turn next to the admissibility of the remaining objects seized in the apartment. The presence of the woman's body gave the officers probable cause to believe that a felony had been committed inside the apartment. At this

point, they were no longer restricted by the Fourth Amendment to merely rendering aid. A search of the apartment to seek out other persons possibly involved or weapons used in the commission of the felony, or even mere evidence to be used in obtaining a conviction would be reasonable. *Warden v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *see Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). The circumstances confronting the officers in defendant's apartment were sufficiently different from those of *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), and justified a more thorough search than a mere search of defendant's person and the area from which he might have obtained either a weapon or incriminating evidence. Here there was fresh evidence of a recently committed crime and, once the condition of the defendant became known, there was probable cause to believe a second felony had been committed within the apartment. The record is unclear as to whether Officer Giles learned of the defendant's near unconsciousness before or after he searched the bedroom, but the mere presence of the woman's body broadened the permissible scope of a search to as broad as may be reasonably necessary to ascertain why, how, and by whom the crime had been committed. *See State v. Gibson,* 76 Wn.2d 814, 459 P.2d 22 (1969). Thus, Officer Giles' search of the bedroom in which he found both the sweater with powder burns and the pistol lying on the floor was lawful and these items were admissible in evidence.

Finally, a detective's search of the room in which the defendant was found revealed a notebook and an attache case from which a savings account book and a small address book were taken. These items were admitted into evidence over objection and were used to secure the conviction which defendant seeks to have reversed. Because these items were seized in the room where the homicide had most likely occurred, the detective's search for them was

reasonable and they, too, were admissible. *Warden v. Hayden, supra.*

The conviction and sentence is affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied March 12, 1973.

Review denied by Supreme Court April 20, 1973.