[No. 2535-1. Division One. June 23, 1975.]

THE STATE OF WASHINGTON, *Appellant,* v. STEVEN E. CAMPBELL, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Frederick L. Yeatts, Deputy,* for appellant.

*Kenneth E. Kanev,* for respondent.

FARRIS, J.—The State appeals from an order suppressing evidence in the criminal prosecution of Steven E. Campbell for an alleged violation of the Uniform Controlled Substances Act.

The primary issue on appeal is whether two of four police officers who were admitted without objection into Campbell's apartment acted reasonably in walking across the approximate 20- to 25-foot living room to a point within that room from which it was possible to look into a bedroom and see marijuana stems in a wastebasket.

The trial court concluded:

That none of the officers had probable cause to arrest the defendant for any crime prior to entering his apartment and looking in the bedroom, and it was therefore unreasonable for all of them to enter into the defendant's apartment under these circumstances.

Conclusion of law No. 1.

That the defendant did not consent to the police walking 20-25 feet to the rear hallway of his apartment to a point from which they observed the contraband in question.

That the seizure of the contraband therein which serves as the basis for the charge in this cause was obtained in violation of the provisions of the United States Constitution and Washington State Constitution against unreasonable searches and seizures.

Conclusion of law No. 2.

That an order suppressing evidence should be entered

suppressing such evidence, and any other evidence obtained incident to and derived from the arrest of the defendant on the above date.

Conclusion of law No. 3.

The State assigned no error to the trial court's findings of fact but argues that the findings do not support the conclusions of law. We agree and reverse.

On June 25, 1973, a security guard at the Burien Garden Apartments called the police to report an altercation in progress on the apartment grounds which allegedly involved Campbell, an apartment resident. When the police arrived, the parties had dispersed; the security guard, however, reported that the argument was continuing in Campbell's apartment. The police then ran a warrants check, discovered an outstanding traffic warrant for a Steven Campbell, and approached the front door of Campbell's apartment, while the security guard covered the rear exit. Three officers knocked and were admitted by Campbell. A fourth officer, who arrived thereafter, was also admitted.

The trial court found as a fact:

That upon their arrival at the defendant's apartment, Officers Dines, Osborn and Russell went to the front door and Officer Dines knocked; the defendant opened the door, gestured and told the officers to come in; that the officers entered through the front door into the living room of the apartment; that the living room is in the southwest corner of the apartment; that the kitchen is in the southeast corner of the apartment, and that there are two bedrooms on the north side of the apartment; that from the entrance of the apartment to the entranceway of the two bedrooms is a distance of approximately 20-25 feet; that at the time the officers entered there were about six individuals in the apartment; that two different females were observed near the entrance to the bedrooms of the apartment; that at the time of entering the apartment, the officers observed no illegal activity and did not observe or hear any argument or commotion and did not observe anyone injured in any way; that at the time of entry, the only mention of permission to enter was made by the defendant at the front doorway; that the defendant was not heard to say to any officer that any officer

could go to the rear of the apartment; that other than the initial permission to come into the apartment's living room and the defendant's later permission to use the telephone in the kitchen, no other permission to search the apartment or to look around the apartment was given by the defendant or any other occupant; that at no time while the officers were in the apartment did they advise the defendant that he did not have to let the officers look around the apartment.

Finding of fact No. 4.

That upon entering the defendant's apartment, Officer Dines questioned the defendant about the commotion in the street and about the activities of the people that the defendant was with on 12th Avenue, S.W.; that about thirty seconds after Officers Dines, Osborn and Russell entered the apartment, Officer Leek entered the apartment after knocking on the front door and after being admitted by one of the occupants; that Officer Dines spoke to the defendant concerning an outstanding traffic warrant in the defendant's name and that the defendant told the officer that he had no outstanding traffic warrants and in fact did not drive a car; that the defendant told Officer Dines that he had been out in the street earlier as reported but that there was no fight or disturbance of any kind but that only there was a brief altercation; that the defendant permitted Officer Dines to use the kitchen phone to check on the warrant further; that Officer Dines found out that the defendant was not the subject in question and that Officer Dines did not arrest the defendant for any outstanding traffic warrant.

Finding of fact No. 5.

That during this time, although not given permission by any occupant of the apartment to do so, Officers Russell and Leek stationed themselves on the north perimeter of the living room next to the small entranceway to the two bedrooms, a distance of approximately 20-25 feet from the point of initial entry into the apartment; that at about that time, Officer Osborn sought identification from the other occupants in the defendant's apartment while Officer Dines telephoned police headquarters and engaged in a conversation with the defendant; that from his vantage point, Officer Russell looked to his right into the bedroom and down at a wastepaper basket resting

against the outside of an open door leading into the northwest bedroom of the apartment; that Officer Russell observed a green garbage bag lining within the wastepaper basket containing what appeared to be marijuana stems.

Finding of fact No. 6.

That Officer Russell walked into the northwest bedroom, examined the contents of the wastepaper basket with Officer Leek, and concluded it did contain marijuana; that Officer Leek left the bedroom and placed the defendant under arrest and read him his Miranda rights; that while standing in the northwest bedroom, Officer Russell observed another translucent green garbage bag similar to the one used to line the wastepaper basket on the bed a couple of feet away and that it appeared to contain a number of small objects; that Officer Russell thereupon walked over to the bed, opened the bag, and observed a number of smaller transparent baggies, containing what appeared to be marijuana; that the above two items (the contents of the two green garbage bags) were seized by Officer Russell and serve as the basis for the charge in this case.

Finding of fact No. 7.

That at no time during the above incident did the defendant or any other interested person ask the officers to leave the defendant's apartment or instruct them not to remain in any position they assumed; that no objection was raised by the defendant or any other interested party with regard to the officer's [sic] activities in the apartment.

Finding of fact No. 8.

 Warrantless searches and seizures are per se unreasonable. *State v. Brown*, 9 Wn. App. 937, 515 P.2d 1008 (1973); *State v. Sanders*, 8 Wn. App. 306, 506 P.2d 892 (1973). However,

No search under the constitutional interdiction takes place when items having evidentiary value are outside a building and in plain view, nor if they are in plain sight inside a building to which access has been lawfully gained. *See State v. LaPierre*, 71 Wn.2d 385, 428 P.2d 579 (1967), and cases cited therein. *See also* 47 Am. Jr., *Search and Seizure* § 20 (1943).

*State v. Martin*, 73 Wn.2d 616, 621, 440 P.2d 429 (1968); *State v. Glasper*, 84 Wn.2d 17, 523 P.2d 937 (1974). The State argues that the marijuana stems were in "plain view" and the constitutional interdiction against warrantless searches was therefore not violated.

Evidence is in "plain view" when there is

> a prior justification for intrusion, an inadvertent discovery of incriminating evidence, and immediate knowledge by police that they have evidence before them.

*State v. Dimmer*, 7 Wn. App. 31, 33, 497 P.2d 613 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The trial court concluded that there was no prior justification for the intrusion and refused to sanction the search and seizure under the plain view doctrine. We have recently held, however, that:

> A momentary intrusion into a person's privacy for questioning can be justified on grounds which would not constitute probable cause to arrest, but in either instance the burden is upon the State to
>> [justify] the particular intrusion . . . [by pointing] to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.
>
> (Footnote omitted.) *Terry v. Ohio*, [392 U.S. 1, 21, 20 L. Ed. 889, 88 S. Ct. 1868 (1967)]; *see also United States v. Nicholas*, 448 F.2d 622 (8th Cir. 1971); *United States v. Harflinger*, 436 F.2d 928 (8th Cir. 1970). The standard governing a court's consideration of the justification is an objective one; do the facts " 'warrant a man of reasonable caution . . .' " to believe "that the action taken was appropriate?" *Terry v. Ohio, supra* at 22.

*State v. Davis*, 12 Wn. App. 32, 34, 527 P.2d 1131 (1974); *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243 (1975).

The State argues that the findings of fact of the trial court provide a basis for a man of reasonable caution to believe that the police entry into Campbell's apartment was appropriate; they were admitted by Campbell in answer to a reasonable inquiry. We agree.

Campbell argues that even if we find justification for the intrusion into his privacy, occasioned by the police seeking

admittance to his home, it was improper for the two officers to intrude further by positioning themselves on the north wall of the apartment, the point from which the marijuana stems were seen. He relies upon finding of fact No. 4, wherein the court found that the officers were not given permission to be on the north side of the living room.

Factual findings of the trial court to which no error is assigned are verities. However, the question here is not whether the officers were given express permission to "station themselves on the north perimeter of the living room," but whether they exceeded the bounds of reasonable conduct by moving to that point in the room before receiving specific permission to do so.

■ Campbell could have properly refused to permit any or all of the officers to enter his living room. However, once the officers were admitted, our inquiry is directed only to the reasonableness of their movement to various points in the room after they gained entry. The record reflects that one of the officers specifically requested permission to use the kitchen telephone and acted only when permission was granted. In addition, all of the officers complied with a request that they not open a closed bedroom door where a child was said to be sleeping. Neither do we find, nor has Campbell directed us to, anything in the record which would support a conclusion that two of four police officers who were granted entry into an apartment which already contained six adults acted unreasonably in moving to the north wall of the room into which they entered without requesting or receiving specific permission to do so. Thus, the officers' "intrusion" to the point from which the sighting took place was justified.

Campbell concedes that the discovery of the marijuana stems was inadvertent. In reliance upon *State v. Murray*, 84 Wn.2d 527, 527 P.2d 1303 (1974), however, he asserts that the officer sighting the stems in the wastebasket did not immediately know that he had evidence before him, a requirement of the plain view doctrine. In *Murray*, police

officers were justifiably on the premises in search of items stolen from Liberty High School when they saw a Sony television set which was not included in a list of items taken from the high school. A check of the Sony's serial number at police headquarters determined that it was stolen but the court held that suspicion that the set was stolen was "pure speculation." *State v. Murray, supra* at 535. In addition, the necessity for checking the serial number precluded the immediate knowledge that the plain view theory requires. The cases differ factually.

■ Here the trial court found as a fact

that Officer Russell observed a green garbage bag lining within the wastepaper basket containing what appeared to be marijuana stems.

That Officer Russell walked into the northwest bedroom, examined the contents of the wastepaper basket with Officer Leek, and concluded it did contain marijuana; . . .

Findings of fact Nos. 6 and 7, in part. In *State v. Palmer*, 5 Wn. App. 405, 487 P.2d 627 (1971), we held the plain view doctrine applicable where the evidence seized was inside of a brown bag, and thus technically not "immediately" known to be evidence, where

the officers had, as they did here, probable cause to believe that incriminating evidence was contained therein. *See Commonwealth v. Cohen*, [359 Mass. 140] 268 N.E.2d 357 (1971) (small sealed manila envelope visible from place of arrest).

*State v. Palmer, supra* at 410-11. We find *State v. Palmer, supra*, controlling upon the facts in issue. We adhere to its interpretation of the requisite degree of knowledge that an officer must have upon sighting evidence under the plain view doctrine. *See also United States v. Wheeler*, 459 F.2d 1228 (D.C. Cir. 1972).

For the same reason, we hold that it was not unreasonable for an officer to look inside a second green garbage bag, identical to the one in which the stems were seen, which was observed lying in plain view in the same bedroom.

Campbell argues, however, that permitting the plain

view doctrine to justify a warrantless *seizure* of evidence is foreclosed by *Coolidge v. New Hampshire, supra* at 468, which holds:

> [P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Accord, State v. Glasper, supra; State v. Murray,* 8 Wn. App. 944, 509 P.2d 1003 (1973); *State v. Day,* 7 Wn. App. 965, 503 P.2d 1098 (1972). Further, Campbell argues that exigent circumstances are

> 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.'

*State v. Sanders, supra* at 310, quoting from *Coolidge v. New Hampshire, supra* at 455.

Washington decisions are inconsistent in applying this aspect of the plain view doctrine. In *State v. Day, supra,* and *State v. Glasper, supra,* the rule was announced and exigent circumstances specifically found. In *State v. Murray, supra,* the rule was announced in dicta. In several cases, the rule was not announced but the facts indicate the existence of exigent circumstances which would have permitted a warrantless seizure. *See State v. Lesnick, supra; State v. Palmer, supra; State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974); *State v. Coburne,* 10 Wn. App. 298, 518 P.2d 747 (1973). Other decisions do not announce the rule but uphold the warrantless seizure despite the absence of exigent circumstances. *State v. Porter,* 5 Wn. App. 460, 488 P.2d 773 (1971);[1] *State v. Dimmer, supra.*

---

[1] Pre-*Coolidge* decisions *(see, e.g., State v. Regan,* 76 Wn.2d 331, 457 P.2d 1016 (1969)) have not been analyzed.

■ The State argues and we agree that an exigent circumstance exists where a police officer sighting evidence in plain view

reasonabl[y] . . . conclude[s] that unless an immediate and warrantless search and seizure is made the contraband will be destroyed or moved, [and that under such circumstances] the officers may make such a search and seize any contraband resulting therefrom.

See *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969). The trial court, however, did not reach the question of whether the police officers reasonably concluded that the evidence would be destroyed unless seized because of its earlier conclusion that the officer had no right to be in a position to see the contraband.

The record satisfies us that the officers' conclusion that the contraband would be destroyed or moved and should therefore be seized was reasonable under the circumstances then existing.

Reversed.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied September 29, 1975.

Review denied by Supreme Court December 15, 1975.