[No. 6201–1.   Division One.   October 8, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. MAURICE VASTER, *Appellant.*

*John A. Strait,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Marsha J. Pechman, Deputy,* for respondent.

RINGOLD, J.—Maurice Vaster appeals the judgment and sentence imposed upon his conviction of second–degree attempted burglary, two counts of first–degree burglary, and two counts of possessing stolen property.

Three questions are posited in this appeal, which we answer in the affirmative.

1. Was the search of defendant's residence for a suspect valid under the Fourth Amendment?

2. Was the seizure of the 16 mm. and 35 mm. cameras permissible within the "plain view" doctrine?

3. Was the search warrant for the second search valid?

During the early morning hours of May 31, 1977, police officers responded to a report of a possible burglary at the residence of Anita Dias, 5020 30th Avenue South in Seattle. This was the third time during the month of May that police had responded to burglary reports in the neighborhood. Upon arriving at the scene they ascertained that no one was at home, but a pane of glass from the front door had been broken and the door had been opened. There were wet footprints on the patio leading to the front door and away from it.

While inside Officer Baumgartner answered a telephone call from a neighbor who stated she had heard an alarm go off and seen a black male in a jogging suit leave the front door area of the Dias residence, run down the block approximately two doors and into a driveway. The officer proceeded down the block two doors to 5040 30th Avenue South. A K–9 police unit's tracking led them to the same location. At that address the officers noticed that the door to the enclosed front porch was ajar, and inside the door they observed muddy footprints matching those on the patio of the Dias residence. The officers concluded there was probable cause to search the residence for a suspect.

They knocked at the door and a Mrs. Wilson, also known as Mrs. Vaster, answered. They learned that she was the

owner and informed her that a suspect had been traced to her home, and asked permission to conduct a search. She assented. Upon entry, the officers noted muddy footprints on the kitchen floor similar to the ones on the patio. About this time the defendant Maurice Vaster and his sister confronted the officers and objected to the search. The defendant's sister specifically demanded that the officers secure a warrant. The officers ignored this demand and continued their search through the house for the suspect. Mrs. Wilson did not join in asking the officers to leave or to secure a search warrant.

In an upstairs bedroom Officer Jankauskas observed a 16 mm. movie camera with a luminous sticker reading "Environmental Protection Agency." He knew that upon the sale of government property, identifying stickers are removed. He inquired whether anyone living in the house worked for the Environmental Protection Agency (EPA) or whether anyone owned the camera. Vaster admitted that he did not work for the EPA or own the camera. The officer then seized the 16 mm. camera.

Officer Jankauskas also observed a 35 mm. camera on a nightstand similar to a 35 mm. camera that had been reported stolen in a car–prowl incident he had investigated at the Dias residence. He picked up the camera, examined it and memorized its serial number, but did not remove it from the residence.

A check of the serial numbers of both cameras confirmed that they were stolen. This information was included in the affidavit of probable cause used for securing a search warrant. A subsequent search of the Wilson residence authorized by the search warrant uncovered numerous other stolen items which were introduced over objection into evidence at defendant's trial.

### Consent To Search

■■ Whether consent is voluntary or coerced is a question of fact to be determined from all circumstances. *State v. Johnson,* 16 Wn. App. 899, 559 P.2d 1380 (1977).

The record indicates that the officers fully informed Mrs. Wilson, the owner of the home, of their intention to search for a suspect. The record reflects that Mrs. Wilson's consent was given voluntarily, although reluctantly. Consent reluctantly given does not amount to coercion. *State v. Breckenridge,* 4 Wn. App. 328, 481 P.2d 26 (1971). Mere persuasion does not constitute coercion. *State v. Murray,* 8 Wn. App. 944, 509 P.2d 1003 (1973). The defendant cites *Tompkins v. Superior Court,* 59 Cal. 2d 65, 378 P.2d 113, 27 Cal. Rptr. 889 (1963), for the proposition that a joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time. *Tompkins v. Superior Court, supra,* is distinguishable from the instant case: (1) the consenting occupant was not present at the time of the search, (2) the officer failed to disclose his purpose to the occupant who was present when attempting to search, and (3) the occupant who was present was not told that consent to enter had been granted by the absent occupant.

In the instant case (1) no contention is made that Mrs. Wilson as the owner of the house and a joint occupant lacked authority to admit the officers into the house and to consent to the search for the suspect, (2) the officers disclosed their desire to search in the presence of the defendant, (3) Vaster was aware that his mother had consented to the search, and (4) Mrs. Wilson did not revoke the consent to search. We conclude the *Tompkins* rule is inapplicable here. Vaster's reliance upon *Duke v. Superior Court,* 1 Cal. 3d 314, 461 P.2d 628, 82 Cal. Rptr. 348 (1969), and *Lucero v. Donovan,* 354 F.2d 16 (9th Cir. 1965) is misplaced; both cases depend upon *Tompkins* for their results.

In *People v. Nunn,* 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied,* 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608 (1974), the defendant had exclusive control of the area within his mother's house which was searched. Also, prior to the search the defendant locked the door to his room

and told his mother not to allow anyone to enter. In *Nunn,* the court stated:

> [W]e find that the defendant had a reasonable expecta- tion of privacy, and that this reasonable expectation was afforded the protection of the rights granted by the fourth amendment. No valid waiver of rights having been made, and a search by policemen having been performed, the defendant's fourth amendment rights were violated and the evidence seized during this search is inad- missible.

*People v. Nunn, supra* at 354.

In the present case there is no evidence that the defend- ant exercised exclusive control over any portion of the resi- dence at 5040 30th Avenue South, as was shown in *Nunn.* On the contrary, Mrs. Wilson's bedroom door alone was equipped with a lock; this was the only evidence of any exclusive use and control of any area in the house. Vaster made no manifestation of his expectation of privacy as to his bedroom but rather protested generally the officers' presence.

We hold that Mrs. Wilson voluntarily consented to a search of her home for a suspect, which consent was never revoked. The police, however, were not authorized to make a general search of the house but only a limited one searching for a suspect. The seizures of the 16 mm. and 35 mm. cameras were outside the scope of the consent. Only an application of the "plain view" doctrine would permit constitutional seizure of the cameras.

## "PLAIN VIEW" DOCTRINE

In *State v. Murray,* 84 Wn.2d 527, 527 P.2d 1303, *cert. denied,* 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975), our Supreme Court stated at pages 533–34:

> The Court of Appeals, in *State v. Dimmer,* 7 Wn. App. 31, 33, 497 P.2d 613 (1972), correctly analyzes *Coolidge v. New Hampshire, supra,* and the application of the plain view doctrine as follows:
>
> In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) it was held that objects

in plain view found inadvertently by police officers while searching under a valid warrant may be seized if it becomes immediately apparent to the police that they have evidence before them. This "plain view" doctrine is an exception to the strict rule announced in *Marron v. United States*, 275 U.S. 192, 48 S. Ct. 74, 72 L. Ed. 231 (1927). The Supreme Court held, in 275 U.S. 192, 196, that:

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

The court, in *Coolidge,* has now carved out a common sense "plain view" exception to this rule with limiting safeguard requirements added to assure that a proper limited search does not become an unconstitutional general exploratory search. *These safeguard requirements needed to justify a "plain view" seizure include: a prior justification for intrusion, an inadvertent discovery of incriminating evidence, and immediate knowledge by police that they have evidence before them.*

(Some italics ours.) *See also State v. Nichols,* 20 Wn. App. 462, 467, 581 P.2d 1371 (1978).

Having held the consent to search was valid, we conclude that the officers were legally on the premises and fulfilled the first requirement of the "plain view" doctrine. The facts indicate that the officers' discovery of both the 16 mm. camera and the 35 mm. camera was inadvertent. Therefore, the second requirement was met. The third requirement of the doctrine is satisfied when an officer has probable cause to believe that what he is viewing is incriminating evidence. *State v. Campbell,* 13 Wn. App. 722, 537 P.2d 1067 (1975).

In the case of the 35 mm. camera, the officer knew the camera was valuable and had a market value of $500; that a similar 35 mm. camera of such value had been reported stolen in a car–prowl incident which he had personally investigated; that a suspect had been seen leaving a home

that had been forcibly entered (perhaps burglarized) and entering the approximate area of the house the officer was then searching. Finally, the officer believed it to be incongruous that such an expensive camera would be located in a house the officer testified was of "modest means." Based on this information the officer immediately had probable cause to believe he was viewing incriminating evidence, and under the "plain view" doctrine he was authorized to seize the same. We conclude that the seizure of the serial number of the 35 mm. camera was proper as all three requirements of the "plain view" doctrine were met.

As to the 16 mm. camera, the first two requirements are satisfied. Further, it was apparent to the officer without touching either the case or the camera that it had a sticker reading "United States Environmental Protection Agency." He recognized that the camera had a value of approximately $1,500 and knew that when the government disposes of such property as surplus, all such identity stickers or stencils are removed. The fact that the officer made inquiries whether Vaster or anyone in the house owned the camera or worked for the EPA does not negate probable cause to believe he was viewing incriminating evidence. As the trial court noted "anything else would have subjected the officers to criticism." The officer had the requisite probable cause to believe that the 16 mm. camera thus observed was stolen property and properly seized it. The holding in *State v. Palmer,* 5 Wn. App. 405, 410–11, 487 P.2d 627 (1971) as restated in *State v. Campbell, supra* at 729 is apposite:

> [W]e held the plain view doctrine applicable where the evidence seized was inside of a brown bag, and thus technically not "immediately" known to be evidence, where
>> the officers had, as they did here, probable cause to believe that incriminating evidence was contained therein. *See Commonwealth v. Cohen,* [359 Mass. 140] 268 N.E.2d 357 (1971) (small sealed manila envelope visible from place of arrest).

### Validity of Search Warrant

■ The seizure of the serial number of the 35 mm. camera and of the 16 mm. camera was lawful. The cameras' status as stolen property was confirmed by the police investigation. This information, together with the recitation of the factual circumstances leading to the search of the Wilson home for a suspect, all of which was contained in the affidavit, provided the issuing judge with sufficient reliable underlying facts and circumstances to allow him to conclude there was probable cause to issue the warrant and authorize a search of 5040 30th Avenue South for stolen items. *State v. Werth,* 18 Wn. App. 530, 571 P.2d 941 (1977).

Vaster further contends that he was represented by incompetent and ineffective counsel. Our review of the record satisfies us that he was ably and competently represented. *State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976).

The judgment and sentence is affirmed.

Andersen, J., concurs.

Dore, J. (concurring in part, dissenting in part)—I would affirm all counts of conviction, except count 4, which I would reverse.

I wholeheartedly agree with the majority's statement

> We hold that Mrs. Wilson voluntarily consented to a search of her home for a suspect, which consent was never revoked. The police, however, were not authorized to make a general search of the house but only a limited one searching for a suspect. The seizures of the 16 mm. and 35 mm. cameras were outside the scope of the consent. Only an application of the "plain view" doctrine would permit constitutional seizure of the cameras.

I also concur in the majority's statement that *State v. Murray,* 84 Wn.2d 527, 527 P.2d 1303, *cert. denied,* 421 U.S. 1004, 44 L. Ed. 2d 673, 95 S. Ct. 2407 (1975), controls and sets forth the criteria for a valid and constitutional "plain view" seizure. These safeguard requirements needed

to justify a "plain view" seizure include (1) a prior justification for intrusion, (2) an inadvertent discovery of incriminating evidence, and (3) immediate knowledge by police that they have evidence before them.

In reference to the 16 mm. camera, which is the basis for the defendant's conviction under count 4, with the attached EPA (Environmental Protection Agency) sticker, the first two requirements of *Murray* are satisfied. However, when the officer made inquiries whether the defendant or anyone in the house owned the camera or worked for the EPA, this clearly evidenced that the officer did not have immediate knowledge the camera was stolen. From the record it is clear that without an exploratory question and answer as to whether any occupant worked at the Environmental Protection Agency, the officer was uncertain as to whether the 16 mm. camera was stolen. Thus, an essential requirement of the "plain view" doctrine was missing. I also hasten to point out that the officer never testified that he had reason to believe that the camera was stolen, independent of the information he received through his inquiry as to employment at the EPA.

The constitution does not permit an officer, although legally on the premises, to direct questions to the occupants to secure information to satisfy himself as to whether items he is viewing are stolen so he can make a seizure under the "plain view" doctrine. This is exactly what happened in the subject case. Consequently, I would have held that the seizure of the 16 mm. camera was illegal, as the third requirement of the "plain view" doctrine was not satisfied and therefore defendant's conviction on count 4, which was predicated on the theft of the 16 mm. camera, should be reversed.

Reconsideration denied December 19, 1979.