[Crim. No. 3662. Fourth Dist., Div. Two. Feb. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE MICHAEL NETH, Defendant and Appellant.

COUNSEL

Leon W. Rosenberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Allen A. Haim, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**KERRIGAN, Acting P. J.**—Charged with possession of marijuana (Health & Saf. Code, § 11530), a felony, defendant's motions to dismiss the infor-

mation (Pen. Code, § 995) and to suppress admission of the marijuana in evidence (Pen. Code, § 1538.5) were denied. Defendant personally waived trial by jury and, pursuant to stipulation, the cause was submitted to the trial court on the basis of the testimony contained in the preliminary transcript. Defendant was found guilty. The court declared the offense a misdemeanor (Pen. Code, § 17), and placed the defendant on probation. He appeals from the order granting probation. His appeal is proper as an order granting probation is deemed to be a final judgment for purposes of appeal. (*People* v. *Robinson,* 43 Cal.2d 143, 145 [271 P.2d 872]; Pen. Code, § 1237, subd. 1.)

The key issue is whether the contraband was the product of an illegal search.

On June 15, 1968, the defendant was a house guest at the Palm Springs residence of the codefendant Bernard Breslau.[1] The defendant telephoned the police department between 2-3 a.m., reported that Breslau had taken an overdose of LSD, and requested that an ambulance be disptached. A Palm Springs police sergeant responded to the call. Upon arrival, the officer was met in the front yard by the defendant, who asked if an ambulance was on the way. The officer replied, "No," and inquired if one was necessary and why. Defendant stated that a person inside had taken LSD. Defendant opened the door of the house and the officer observed Breslau lying on his back in the entryway. The officer returned to the police unit and placed a call for an ambulance. Suddenly Breslau jumped up, ran out of the door, and yelled, "Don't let them get me." The officer and the defendant succeeded in subduing him, pinning him down on the front lawn. The youngster was hallucinating, rolling on the ground, and making unusual, incoherent noises. The ambulance arrived within 30 minutes and removed him to the hospital.

The officer asked the defendant exactly what had transpired before his arrival. Initially, the defendant was evasive in answering, but ultimately reiterated that Breslau had told him he had taken LSD.

The officer advised the defendant it would be necessary for him to enter the house to locate the container from which the poison had been taken. The defendant stood in the doorway, refusing the officer permission to enter. He finally stepped aside and the sergeant followed him into the living room. The officer asked where the LSD container was. Defendant replied that he didn't know.

Within 1-2 minutes after the entry, two additional Palm Springs officers arrived and came into the living room. They also had received a report of

---

[1]Breslau was also charged with possession of marijuana but was acquitted.

the narcotic overdose. When they arrived, the door was open and they saw the first officer inside. The first officer informed one of the new arrivals as to the course of events since his initial arrival. The second officer asked the defendant what Breslau had taken, and the defendant replied, "LSD."

The second officer observed a plastic "baggie" in a metal bowl. The bowl was setting on a breakfast bar which separated the kitchen and living room. The bag was in plain view. "Zigzag" cigarette papers were nestled beside the bag. The officer recognized the contents of the bag as being marijuana. Defendant was placed under arrest.

The second officer then continued a further search of the residence. He found another bag of marijuana inside a suitcase in one of the bedrooms. Defendant admitted it was his suitcase. A further search of the master bedroom by the second officer revealed a film-type cannister containing marijuana seeds and debris. Defendant said that the cannister belonged to Breslau.

The defendant rendered the following testimony at the motion to suppress hearing: He never gave any of the three officers permission to enter the Breslau residence; the first officer told him that his reason for entering was to look for the LSD container; when the first officer entered, two squad cars were outside; he left the door open; the first officer did not search the house, but merely asked for his identification; the "baggie" of marjiuana found in the metal bowl by the second officer was not in "plain sight"; the second officer went over to the bowl, stirred inside with a pen or pencil, lifted some of the contents up, and looked underneath.

Defendant contends that none of the exceptions justifying a warrantless search were present since there was neither an arrest, probable cause to arrest, nor consent.

■ The Fourth Amendment provides that the people shall be secure against "unreasonable searches and seizures"; the constitutional guarantees do not prohibit all searches, but only those which are unreasonable. (*Bielicki* v. *Superior Court,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 888].) ■ "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153].) Recent cases exploring the dimensions of Fourth Amendment protections have spoken in terms of a "right to privacy." In *People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], the California Supreme Court suggested that the appropriate test for Fourth Amendment violations is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated

by an unreasonable governmental intrusion. (See *Katz* v. *United States,* 389 U.S. 347, 361 [19 L.Ed.2d 576, 587, 88 S.Ct. 507, 517].)

■ In the case under review, the first officer was faced with a situation involving a severely ill man in need of immediate medical attention. Once the officer had procured an ambulance, he informed defendant of his intention to search the premises for the poison container, apparently for the purpose of assisting the medical authorities in diagnosis and treatment. Certainly the defendant could not harbor a reasonable expectation that he could summon the officers to aid Breslau and that their involvement would cease when they secured an ambulance, especially since defendant exhibited an uncertainty as to the cause of Breslau's condition. "The fact that abuses sometimes occur during the course of criminal investigation should not give a similar coloration to procedures which are basically reasonable." (*People* v. *Roberts,* 47 Cal.2d 374, 380 [303 P.2d 721].)

Several California cases have recognized the principle that in emergency situations it is proper for the police to conduct a search in order to assist medical personnel in diagnosis and treatment of the victim, and that the ordinary rules of search and seizure are inapplicable under such circumstances.

In *People* v. *Gonzales,* 182 Cal.App.2d 276 [5 Cal.Rptr. 920], an officer discovered the defendant in his car in a state of shock, bleeding profusely from a knife wound; an ambulance was called, and the defendant was removed to the hospital where hospital personnel, in the presence of the officer, conducted a search for identification and discovered narcotics; the court held that the search was proper since the hospital had a duty to report the identity of any knife victim; the court further stated that a search by the police officer would also have been justified since the duty of a conscientious officer would be to identify the victim.

In *People* v. *Gomez,* 229 Cal.App.2d 781 [40 Cal.Rptr. 616], the defendant was found unconscious in his car, experiencing convulsions; the ambulance driver was a police officer; while a doctor was treating defendant, the officer went through his pockets in an attempt to identify him; after identification had been effected the officer continued the search of the defendant's pockets and discovered heroin; the officer testified that his reason for continuing the search was to attempt to discover the cause of illness and be of assistance to the doctor; the court held that the officer had acted reasonably.

Under the foregoing authorities, a search of Breslau's person would have been proper. A search of Breslau's premises was justified under a similar rationale.

In *People* v. *Roberts, supra,* 47 Cal.2d 374, police officers were checking on a burglary suspect at his apartment; the apartment manager told the officers that the suspect was sickly; when the officers went to the door, they mistakenly believed they heard moaning sounds and directed the manager to let them in; the apartment was empty; one of the officers discovered stolen property in plain sight; the court held that the initial search was proper as the purpose thereof was to determine if someone was in distress. (See also *People* v. *Clark,* 262 Cal.App.2d 471 [68 Cal.Rptr. 713].)

The existence of the medical emergency relating to Breslau's condition justified the first officer's entry. ■ "Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property, and reasonably appears to the actor to be necessary for that purpose. (Citations.)" (*People* v. *Roberts, supra,* 47 Cal.2d 374, 377-378.) ■ It was reasonable for the officer to conclude that finding the poison container was important. In these circumstances, the entry did not constitute an unreasonable governmental intrusion.

The entry of the other two officers may be sanctioned on an identical basis as they also had responded to the same emergency call.

■ The marijuana was properly admitted into evidence, even though it was disconnected with the purpose of the original entry, since it was in plain sight. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 377.) Discovery of the marijuana justified the arrest of the defendant without a warrant. (Pen. Code, § 836, subd. 3.) Since the search took place prior to June 23, 1969, the new rules limiting warrantless searches (*Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]), are not applicable. (*People* v. *Edwards,* 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) Consequently, the search of the bedroom areas was permissible.

The judgment (order granting probation) is affirmed.

Tamura, J., and Gardner, J., concurred.