[Crim. No. 17565. Second Dist., Div. Five. Dec. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP RODRIGUEZ GALLEGOS, Defendant and Appellant.

## COUNSEL

Ronald W. Weiss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Following the filing of a petition under section 3100.6 of the Welfare and Institutions Code, a hearing was held to determine whether appellant was a narcotic addict or in imminent danger of becoming addicted.

The court denied appellant's motion to dismiss the petition on the grounds that he was unlawfully taken into custody and that the evidence of addiction was unconstitutionally obtained. The court found appellant to be a narcotic addict within the meaning of section 3100 of the Welfare and Institutions Code. He was ordered committed to the California Rehabilitation Center. He appeals from the order of commitment.

The facts, viewed in the light most favorable to the People, are as follows: At about 4:05 p.m. September 22, 1969, Sergeant Gouge of the Los Angeles Police Department received a phone call from a female who refused to identify herself. The caller stated that appellant had taken an overdose of heroin and had passed out at an address on Ithaca Avenue. Gouge had not, to the best of his knowledge, ever spoken to the caller before. He believed her to be a middle aged adult. Gouge knew that appellant was a user of heroin having personally observed needle marks on appellant's arms within the previous three weeks. Gouge proceeded to the Ithaca Avenue address without undertaking any further investigation. At the location both he and his partner knocked on the door and on the side of the house several times. A small girl, Henrietta Martinez, opened the door.[1] Gouge asked if Phillip Gallegos was home. Henrietta said, "Yes, he's in bed with my mother." Gouge then asked, "Can you wake him?" Henrietta left Gouge's view, leaving the door about halfway closed. She returned about a minute later and stated that she could not awaken appellant.[2] Gouge then entered the house, without asking or receiving Henrietta's permission to enter and without asking if her mother could come to the door, or if she could wake her mother. Gouge did not know to whom the residence belonged, did not know if appellant lived there, and did not ask. Gouge made no effort to attract the attention of Henrietta's mother.

Gouge proceeded to a bedroom of the residence where he found appellant in bed with Mrs. Martinez. Appellant was clothed only in a pair of shorts. Both appellant and Mrs. Martinez appeared to Gouge to be sleeping when he first saw them, but he had no trouble waking appellant. Gouge observed needle marks on appellant's hands and arms. Appellant's movements were slow, his speech slurred, his eyes glassy and his pupils contracted.

---

[1] Gouge estimated her age as five. Henrietta and her mother both testified at the hearing that she was seven. Their testimony concerning the events differed considerably from that of the officer. It was disbelieved. Significant, however, is that the mother testified that Officer Gouge asked her whether appellant had taken an overdose.

[2] Officer Gouge was not entirely consistent with respect to what Henrietta said. Twice—once on direct and once on cross-examination—he stated that Henrietta said that she could not awaken appellant. Later during his cross-examination he said that he merely asked Henrietta: "Did you awaken him?" To the extent that this presented a conflict in the evidence, we must assume that the trial court resolved it in favor of its ruling on the legality of Gouge's entry.

Gouge placed him under arrest and advised him of his constitutional rights. The officer asked appellant when he had last "fixed" and appellant replied that it had been two days.[3]

It was the opinion of Gouge, who was stipulated to be an expert "in the field of narcotics and narcotic investigation and narcotic addiction," that appellant's physical condition was not consistent with that statement.

The medical evidence presented supported the finding of addiction.

When asked for his reason in entering the premises Gouge testified: "In view of the fact that the phone call that I had received stated that Mr. Gallegos had taken a large dose of heroin and the fact that there was no answer to my knocks on the door, my partner's knocks, and the fact that the small child was unable to awaken Mr. Gallegos, I felt that he probably had taken a large amount of heroin and that he was in danger of dying."

The trial court made a specific finding that Gouge and his partner entered because such information as they had "confirmed in their minds that [Gallegos] was out because of an overdose of heroin."

■ On appeal it is urged that the statement concerning the "fix" should not have been admitted, since appellant, because of his physical condition, was incompetent to waive his right to remain mute. It is a sufficient answer to that claim that no objection was made in the trial court. (*People* v. *Coleman,* 8 Cal.App.3d 722, 731-732, fn. 4 [87 Cal.Rptr. 554]; *People* v. *Castro,* 257 Cal.App.2d 643, 645-646 [65 Cal.Rptr. 62].)

■ Appellant also claims that his arrest was unlawful because the officers failed to comply with section 844 of the Penal Code.[4]

In *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721], it was said: ". . . Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose. . . ." Roberts has been frequently followed. (See for example, *People* v. *Gonzales,* 182 Cal.App.2d 276, 279 [5 Cal.Rptr. 920]; *People* v. *Gomez,* 229 Cal.App.2d 781, 783 [40 Cal.Rptr. 616]; *People* v. *Roman,* 256 Cal.App.2d 656, 659 [64 Cal.Rptr. 268]; *People* v. *Clark,* 262 Cal.App.2d 471, 476-477 [68 Cal.Rptr. 713]; *Romero* v. *Superior Court,*

---

[3]Before Officer Gouge testified to this admission, it was stipulated that "the proper *Miranda* rights" had been read to appellant.

[4]It is now settled that such claims may be advanced in civil narcotic commitment proceedings provided, of course, that the illegality is exploited by the People. (*People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800].)

266 Cal.App.2d 714, 718-722 [72 Cal.Rptr. 430]; *People* v. *Neth,* 5 Cal.App.3d 883, 887-888 [86 Cal.Rptr. 12]; *People* v. *Superior Court,* 6 Cal.App.3d 379, 381-382 [85 Cal.Rptr. 803].)

■ While some other trier of fact might have doubted Officer Gouge's sincerity concerning the purpose of his entry, it is not our place to reverse, if the trial court believed him, as it obviously did.

It is urged that the officer was overly zealous in entering the bedroom and should first have caused Henrietta to awaken Mrs. Martinez. Hindsight tells us that, had he done this, he probably would have learned that his services were not needed to save Gallegos' life. We do not think, however, that the situation which Gouge faced made such a course constitutionally necessary. Given Gouge's sincere belief that Gallegos was in mortal danger from an overdose, he was entitled to assume that Mrs. Martinez, who was apparently doing nothing about it and who had failed to respond to the knocking, was not in very good shape either.

We may readily concede that the information Gouge had fell short of probable cause to arrest Gallegos. We have not, however, been referred to any authority to the effect that information which authorizes an entry to save a life must be of the same caliber as intelligence which authorizes an arrest. It is one thing to insist that before a person can be deprived of his freedom there must exist "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) The trigger which sets a lifesaving operation in motion should be more sensitive.

■ We appreciate that there is always the possibility that the police may try to hide an illegal entry under the cover of a pretended rescue mission. Here, as always, we must rely on the ability of trial courts to ferret out the true facts.

The order is affirmed.

Aiso, J., and Reppy, J., concurred.