**Bobby Foster VILLINE, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 6378.**

District of Columbia Court of Appeals.

Argued Oct. 11, 1972.

Decided Dec. 7, 1972.

Lowell Fine, with whom Robert P. Feeney, both appointed by this court, was on the brief, for appellant.

Jason D. Kogan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Frederick C. Moss, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted of one count of possession of marijuana, D.C.Code 1967, §. 33–402. He contends that the individual who consented to the search of his premises had no authority to waive his fourth amendment rights and, therefore, it was error to admit the marijuana into evidence.[1] Disagreeing with appellant, we affirm.

At approximately 9:25 p. m. on November 20, 1971, Officers Simnick and Queen of the Metropolitan Police Department were approached by a man who told them that a young woman at 1204 Massachusetts Avenue, N.W., was "having trouble." As the officers neared the apartment building, a young woman (Miss Brown), who appeared nervous and frightened, came out of the main entrance to meet them. She complained that her boyfriend, with whom she was living, was drunk and had told her that if she left the apartment to baby-sit upstairs, she would be harmed. It was also ascertained from Miss Brown that appellant had been smoking marijuana and that marijuana was in the apartment.

The officer, after being requested by Miss Brown to enter the apartment with her, asked if she had a key. She stated that she did not have one at present because appellant had taken it from her. The officer then knocked on the door with his nightstick and shouted, "Police officers"; Miss Brown also called appellant by name. When appellant did not respond, the officer told Miss Brown that he would not break down the door and asked if there was any other way for her to gain entrance to the apartment. She responded that the resident manager knew she lived there and would give her a key.

While waiting for Miss Brown to return, the officer peered through a small hole in the side of the door and saw appellant lying on a bed, apparently asleep. He also noticed a small table about 12 inches from the bed; on the table were three small brown envelopes.

Approximately 5 minutes after she had left, Miss Brown returned with a key and opened the door. Before entering, Officer Simnick again asked her if she wanted them to go in; he also asked if the apartment was leased to her. He was told that the apartment was in appellant's name but that she lived there and she wanted the officers to enter, which they did.

After appellant was awakened, Officer Simnick asked him what was in the envelopes. Appellant replied, "Nothing; nothing; none of your business." The officer picked up one of the envelopes and, looking inside, saw a substance that appeared to be marijuana. Appellant was then placed under arrest.

■ Appellant's contention that Miss Brown did not have authority to consent requires our close examination of the underlying facts of the consent for, when a warrantless search is based on waiver rather than necessity, the burden of establishing that waiver is placed on the Government. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The burden is especially weighty when the Government asserts that the waiver was accomplished by a third party.[2] In the instant case, after a careful review of the facts, we are satisfied that the Government has met its burden. It was established by clear and convincing evidence that Miss Brown was a lawful co-tenant who had the right to be present in at least the jointly shared areas of the apartment. The rationale for allowing this search is not based strictly on property concepts; rather, it is based on appellant's reasonable expectation of privacy. It is fundamental

---

1. Appellant does not question the voluntariness of the consent.

2. *See* Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

that the fourth amendment protects people and not places, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), however, that protection is only afforded when the assertion of the right is *reasonable* in the constitutional sense.

In cases of joint control of property, the courts are faced with the impossibility of severing the joint right of control and the undesirability of letting the right of one tenant be limited by the right of the other. The Supreme Court resolved this problem in Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), where it held that there is no reasonable expectation of privacy in jointly controlled property— one "assumes the risk" that the other may consent to a search of the property.[3] There are many other analogous situations where an individual may surrender certain aspects of his right to privacy by acting in concert with others. In United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L. Ed.2d 453 (1971), Mr. Justice White summarized several situations in which a wrongdoer "assumes the risk" of his colleague's reporting his actions to the police and then concluded:

> In these circumstances, "no interest legitimately protected by the Fourth Amendment is involved," for that amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." [*Id.* at 749, 91 S.Ct. at 1125; citation omitted.]

Similarly here, appellant, by sharing[4] his apartment with Miss Brown, ran the risk that she would consent to a search of the common areas of that abode.

Having examined appellant's other contentions and finding them to be without merit, the judgment of the trial court is

Affirmed.

---

3. *See also* Dupont v. United States, D.C. App., 259 A.2d 355 (1969).

4. The trial court's finding that Miss Brown had an immediate equal right to posses-

---

sion of the property is supported by the evidence. The mere fact that Miss Brown did not have a key was only one factor to consider.