UNITED STATES, Appellant,

v.

Roger W. BOOTH, Appellee.

UNITED STATES, Appellant,

v.

Bertha Lee WHITE, Appellee.

Nos. 81–771, 81–772.

District of Columbia Court of Appeals.

Argued Nov. 18, 1982.

Decided Jan. 24, 1983.

court concluded that the statements and the broom handle were fruits of an unlawful police entry into the front hall of a rooming house where appellees resided. We reject the government's contention that appellees had no legitimate expectation of privacy in the front hallway of their rooming house, and thus lacked standing to challenge the police officer's actions. But, in reviewing the merits, we agree with the government that emergency circumstances, perceived by the officer at the time, justified his limited entry, in order to determine whether his assistance was needed by someone in danger of bodily harm inside the premises. Accordingly, we reverse the trial court's suppression order and remand for further proceedings.

## I.

On March 7, 1981, Officer William Terrell, patrolling in his scout car, received a radio report of an "assault in progress" at 1620 Swann Street, N.W. Officer Terrell drove to the address and knocked on the door. When appellee Booth opened the door, Officer Terrell noticed dried blood on Booth's nose and asked whether he had called the police. Booth answered negatively, but Officer Terrell testified at the suppression hearing that the blood on Booth's nose gave him "reason to believe that somebody in there had been injured." Booth would not respond when Terrell asked why he had blood on his nose.

Officer Terrell then crossed the threshold of the front door into the hall. He testified that, from the hallway, he looked inside the living room "to see if anybody was hurt." He again inquired whether anyone had called the police (about five persons were in the living room). When he was told that no one had called the police, Officer Terrell turned to leave. As he reached the front door, he heard a door open on the second floor, looked up, and saw the complaining witness—"his face covered with blood." Terrell went upstairs. The complaining witness told him that the people downstairs had attacked him, and that appellee Booth

Katherine Winfree, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Natalia M. Combs, Asst. U.S. Atty., Washington, D.C., were on the briefs, for appellant.

Gerson Simon, Washington, D.C., appointed by this court, for appellee Booth.

J. Philip Kessel, Washington, D.C., appointed by this court, for appellee White.

Before KELLY, KERN and FERREN, Associate Judges.

FERREN, Associate Judge:

The government appeals from a trial court ruling suppressing evidentiary use of statements by appellee White, as well as a broom handle that appellees allegedly used to assault the complaining witness. The

was one of the attackers. Officer Terrell returned downstairs and placed appellee Booth under arrest. At that point, appellee White approached Terrell and stated that she was the person who had struck the complaining witness with a broom handle.

Before trial, appellee White moved to suppress her statement, and both appellees moved to suppress the broom handle, as fruits of an unlawful entry.[1] The trial court ruled that, although exigent circumstances existed, Officer Terrell did not have a right to enter without a warrant, since he did not have probable cause to believe an assault had occurred in the house. The court accordingly suppressed the statement and the broom handle.

## II.

The government argues that appellees lack standing to challenge the police entry and seizure because they never have asserted a legitimate expectation of privacy in the hallway and other common areas. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *see Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The government correctly stresses that one who contests a search or seizure bears the burden of establishing his or her Fourth Amendment rights. *Rakas, supra,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1. Appellees may establish that expectation "by reference to 'a source of that expectation outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *In re B.K.C.,* D.C.App., 413 A.2d 894, 899 (1980) (quoting *Rakas, supra* 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12).

In discussing expectations of privacy, the Supreme Court has admonished that property law distinctions are not controlling. *Rakas, supra* at 143, 99 S.Ct. at 430. Indeed, "*Rakas* emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment." *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (rejected contention that ownership of drugs in someone else's handbag conferred standing to contest the search of the handbag). Instead, proper analysis requires the court to examine a variety of factors tending to reflect privacy interests worthy of society's protection. These include the defendant's access to and use of the area in the past, *id.* at 105, 100 S.Ct. at 2561, the defendant's authority to exclude others from the area entered and searched, *id.; see Rakas, supra,* 439 U.S. at 144 n. 12, 99 S.Ct. at 430 n. 12, and the defendant's reasonable precautions in attempting to maintain privacy. *In re B.K.C., supra* at 900 (defendant's "temporary relinquishment of possession" not sufficient to defeat defendant's legitimate expectation of privacy); *see* Slobogin, *Capacity to Contest a Search and Seizure: The Passing of Old Rules and Some Suggestions for New Ones,* 18 AM.CRIM.L.REV. 387, 407 (1981).

Appellees have asserted that they reside in the rooming house at 1620 Swann Street, N.W., and the government has never challenged that assertion.[2] The government argues, nonetheless, that because appellees live in a rooming house, not in a private home, they lack a legitimate expectation of privacy in the front hall where Officer Terrell made his warrantless entry. *See, e.g., United States v. Anderson,* 175 U.S.App.

---

1. Appellee White originally moved to suppress her statements on the ground that they were in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The suppression hearing focused on the Fourth Amendment issue, however, and the trial court did not rule on the *Miranda* question. That issue is not raised here.

2. We also note that, contrary to appellees' assertion, the government has preserved for appeal its claim that appellees lacked standing. Unlike the situation in *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the government did raise this argument at the suppression hearing and is not foreclosed from addressing it here.

D.C. 75, 79, 533 F.2d 1210, 1214 (1976) (defendant's constitutionally protected privacy interest began at the door to his room, not at the door to the rooming house). We cannot agree. The government's argument places too much reliance on property law concepts. When we apply the broader range of relevant factors, appellees' legitimate expectation of privacy in the front hallway of this particular rooming house is clearly established.

In contrast with *Rawlings, supra* 448 U.S. at 105, 100 S.Ct. at 2561, where the defendant "had never sought or received access" to the handbag searched by the police, appellees unquestionably had access to the hallway, which they regularly would use as a means of ingress and egress to the rooming house. Further, the other two factors—"authority to exclude" and "precautions to maintain privacy"—cut in appellees' favor. Unlike the hallway in the rooming house in *Anderson, supra* 175 U.S. App.D.C. at 79, 533 F.2d at 1214, which was open to "residents of the rooming house, their guests, [and] people making deliveries," the rooming house at 1620 Swann Street, N.W.—and thus its front hallway— was not open to the general public. Indeed, we note that Officer Terrell, upon his arrival, did not even perceive that 1620 Swann Street, N.W. was a rooming house. Thus, if a stranger appeared at the front door, appellees, as residents, had authority, and were in a position, to deny entry.[3] (If appellee Booth had consented to Officer Terrell's entry, we cannot believe the government would not vouch for his authority to regulate entrance.)

In sum, we conclude that appellees had standing to challenge Officer Terrell's entry because they had a legitimate expectation of privacy in the front hallway of the house they shared, which was not obviously a rooming house open to the general public.

## III.

We turn to the question whether Officer Terrell's entry was justified. "[I]t is a cardinal principal that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).[4] One exception is "exigent circumstances." A warrantless entry and reasonable search will be authorized if the dangers are such that the entry cannot be delayed. *See, e.g., Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Minick,* D.C.App., 455 A.2d 874 (1983) (en banc); *Brooks v. United States,* D.C.App., 367 A.2d 1297 (1976); *Dorman v. United States,* 140 U.S. App.D.C. 313, 435 F.2d 385 (1970) (en banc). Typically, the exigent circumstances exception applies when police officers are pursuing an offender who they have probable cause to believe committed a known offense. *See id.* Several courts, however, have extended the exception (or have created another exception) to permit warrantless entry in an "emergency" requiring preventive action, even though no crime assuredly has been committed; *e.g.,* a person inside the premises is reasonably believed to be in peril. See note 6 *infra* and accompanying text.

---

3. *Cf. Villine v. United States,* D.C.App., 297 A.2d 785, 786–87 (1972) (when defendant shares apartment with co-tenant who has right to be present in at least jointly shared areas of the apartment, defendant runs risk that co-tenant would consent to a search of the common areas).

4. Appellee Booth alleges that Officer Terrell's entry was infirm because it also violated 18 U.S.C. § 3109, in that Terrell failed to identify himself and state his purpose. We make no finding as to appellee's factual assertion but note that exceptions to the Fourth Amendment warrant requirement are also exceptions to 18 U.S.C. § 3109. *Sabbath v. United States,* 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759 n. 8, 20 L.Ed.2d 828 (1968).

In the present case, the trial court did not apply the "emergency" line of cases. In effect relying on the case law represented by *Brooks, supra,* and *Dorman, supra,* the court found that Officer Terrell confronted "exigent circumstances" but did not have "probable cause to believe that an assault actually occurred in that house"—a prerequisite for "go[ing] in without a search warrant." The court accordingly suppressed evidentiary use of appellee White's statement and the broom handle.

■ We disagree with the trial court's analysis, for we are persuaded by the line of cases establishing the "emergency" exception to the warrant requirement.[5] While not directly ruling on the emergency exception, the Supreme Court has stated that it does "not question the right of the police to respond to emergency situations" and cites "[n]umerous state and federal cases [that] have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey, supra,* 437 U.S. at 392, 98 S.Ct. at 2413 (footnotes omitted). The Court noted, however, by analogy to the *Terry* line of cases authorizing a stop and frisk on less than probable cause to arrest, that a warrantless search (and, presumably, a warrantless entry), in an emergency situation, "must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Id.* at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882–1883, 20 L.Ed.2d 889 (1968)).

The emergency exception is well established in the case law of other jurisdictions, both federal and state. For example, the United States Court of Appeals for the Second Circuit has held that, when a police officer heard screams emanating from a hotel room, the officer had a "duty" to investigate by entering the room to determine whether anyone was in need of aid, even though an occupant had informed the officer that assistance was not needed. *United States v. Barone,* 330 F.2d 543, 545 (2d Cir.), *cert. denied,* 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) ("The right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers, ...."). Similarly, in *People v. Gallegos,* 13 Cal.App.3d 239, 91 Cal.Rptr. 517 (1970), when the police answered an anonymous phone call that the defendant had overdosed, and a young girl answering the door said she could not arouse him, the officer's entry was justified as a "lifesaving operation," even though the officer did not have probable cause to arrest the defendant at that time. *Id.* at 243, 91 Cal.Rptr. at 519. Finally, in a case similar to the one now before us, the Washington Court of Appeals held that when a police officer received a dispatch for "trouble unknown" at an address, arrived and knocked but did not get a response, and then saw a man "swaying" through a partially opened curtain, his warrantless entry was justified. *State v. Sanders,* 8 Wash.App. 306, 506 P.2d 892 (1973).[6]

■ In view of such precedent, we conclude that the trial court erred in basing its decision on whether Officer Terrell had probable cause to believe an offense had been committed inside the rooming house. Instead, the court should have considered the "emergency" exception to the warrant requirement and appraised the validity of the entry and related search by reference to whether its three criteria were satisfied. First, the police officer must have probable cause, based on specific, articulable facts, to believe that immediate entry is necessary to assist someone in danger of bodily harm

---

5. Our deference to the trial court in this context is limited to its factual findings. *See Brooks, supra.*

6. *See also People v. Amato,* 193 Colo. 57, 562 P.2d 422 (1977) (en banc); *State v. Resler,* 209 Neb. 249, 306 N.W.2d 918 (1981); *People v. Mitchell,* 39 N.Y.2d 173, 347 N.E.2d 607, 383 N.Y.S.2d 246, *cert. denied,* 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976); *State v. Plant,* 28 Or.App. 771, 561 P.2d 647 (1977).

inside the premises.[7] Second, the entry must be tailored carefully to achieve that objective, *see Mincey, supra* 437 U.S. at 393, 98 S.Ct. at 2413; the officer can do no more than is reasonably necessary to ascertain whether someone is in need of assistance, and then to provide that assistance.[8] Finally, the entry must not be motivated primarily by the intent to arrest or to search, but by an intent to investigate a genuine emergency and to render assistance.

■ In the present case, an emergency situation did justify Officer Terrell's warrantless entry into the front hall of the rooming house. There were specific, articulable facts giving Officer Terrell probable cause to believe entry was necessary to render assistance: he had received a radio report that an assault was in progress at 1620 Swann Street, N.W.; when he arrived at that address, the person answering the door, appellee Booth, had dried blood on his face; and Booth did not respond to Officer Terrell's question as where the blood came from.[9] Moreover, the scope of Officer Terrell's entry was "strictly tied to and justified" by the circumstances. *Warden, supra* 387 U.S. at 310, 87 S.Ct. at 1651 (Fortas, J., concurring). He stepped over the threshold and inquired whether anyone in the living room had called the police. When they responded negatively, Terrell turned to leave. At that point, with Terrell on his way out, the complaining witness—with blood on his face—opened his second floor bedroom door and summoned the officer. Finally, at the time of entry, Officer Terrell did not intend to arrest or search but to determine whether his assistance was need-

ed. He testified at the suppression hearing: "[Appellee Booth] had blood on his nose, so I had reason to believe that somebody in there had been injured," and again, "I just looked in the room to see if anybody was hurt."

Accordingly, the trial court erred in suppressing evidentiary use of the broom handle and appellee White's statements as fruits of an unlawful entry.

*Reversed and remanded for further proceedings.*

KERN, Associate Judge, concurring:

Given the emergency circumstances which brought the police officer to the door of 1620 Swann Street, N.W., and the dried blood on the face of appellee Booth who answered the door, I am persuaded that the trial court erred in concluding the officer should have remained outside rather than entering and also erred in suppressing the evidence the officer seized there. I do not deem it necessary to reach the issue of standing upon the record before us which leaves unclear the type of dwelling the Swann Street house was and the living arrangements therein. Accordingly, I limit my concurrence to the judgment reversing and remanding for further proceedings upon the ground that the trial court's suppression ruling upon the facts was erroneous as a matter of law.

---

7. There is some authority that the police officer need have only a reasonable belief that his or her assistance is necessary. *See, e.g., Mitchell, supra; Sanders, supra;* Model Pre-Arraignment Code § SS 260.5. We believe the probable cause formulation is preferable.

8. However, inadvertent observations of objects in plain view, made by an officer from a place where he or she has a right to be, do not constitute a search for Fourth Amendment purposes. *Coolidge v. New Hampshire,* 403 U.S. 443, 466–67, 91 S.Ct. 2022, 2038–2039, 29 L.Ed.2d 564 (1971).

9. The trial court found that these facts amounted to exigent circumstances but decided that Officer Terrell should have remained outside to investigate further, *e.g.,* confirming the address on the radio, listening for noises, etc. While these options may have presented lesser intrusions, they were not constitutionally mandated where, as here, exigent circumstances justified the entry in order to prevent bodily harm. *See Gallegos, supra* 13 Cal.App.3d at 243, 91 Cal. Rptr. at 519.